| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**Caption in Compliance with D.N.J. LBR 9004-2(c)** | |
| **SHAPIRO, CROLAND, REISER**<br>**APFEL & DI IORIO, LLP**<br>John P. Di Iorio, Esq.<br>411 Hackensack Avenue<br>Hackensack, NJ 07601<br>(201) 488-3900<br>Proposed Attorneys for Debtor<br>and Debtor-In-Possession | |
| In Re:<br><br>JFM HAMBURG LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-<br><br>Hearing Date: , 2023<br>at a.m. |

**DECLARATION OF RANJANA JETHWA IN SUPPORT OF FIRST DAY RELIEF**

Ranjana Jethwa declares, pursuant to 28 U.S.C. §1746, under penalties of perjury as follows:

1. I submit this Declaration in support of the following "first day" motions and applications (collectively the "First Day Motions"):

- Debtor's Application For Expedited Consideration Of First Day Matters (the "Expedited First Day Application");
- Debtor's Motion for Entry Of An Order Authorizing Debtor's Interim And Final Use Of Cash Collateral And Scheduling A Final Hearing (the "Cash Collateral Motion");
- Debtor's Motion For Entry Of A Final Order Authorizing The Debtor To Pay Pre-Petition Wages (the "Wages Motion");
- Debtor's Motion For Entry Of Interim And Final Orders (A) Authorizing The Debtor To: (A) (1) Continue Its Cash Management System, (2) Use Its Existing

Bank Accounts; and (3) Maintain Existing Business Forms; (B) Authorizing And Directing Debtor's Bank To Honor All Related Payment Requests; (C) Scheduling A Final Hearing; and (D) Granting Related Relief (the "Cash Management Motion"); and

- Debtor's Motion For Entry Of An Order Regarding Adequate Assurance For Future Performance For Utilities And Establishing Procedures For Determining Requests For Additional Adequate Assurance (the "Utility Adequate Assurance Motion").

## I. BACKGROUND

2. I am the manager of JFM Hamburg LLC ("Debtor"). I am familiar with the Debtor's day to day operations, business affairs and books and records. Except as otherwise indicated, all facts set forth in this Declaration are offered to the best of my knowledge, information and belief, and are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtor's employees or professionals working with me or under my supervision, or my informed opinion based upon my experience and knowledge of the Debtor's industry, operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtor.

3. Debtor entered into a Franchise Agreement with Popeye's Louisiana Kitchen, Inc. ("PLKI") on December 16, 2008 (the "Franchise Agreement") and operates a Popeye's restaurant franchise located at 1046 Hamburg Turnpike, Wayne, New Jersey.

4. Debtor was owned by my late husband, Ramesh Jethwa, until he passed away on December 19, 2018.

5. PLKI knew of my husband's passing shortly after he died and PLKI knew that my daughter and a District Manager, Ketul Patel, continued to operate the restaurant and I assumed responsibility for operations in March 2022.

6. Initially, PLKI was very satisfied with the job I was doing of operating the restaurant. Then, earlier this year, I applied for a transfer of the interest of the Franchise to me and without supplying any reasoning to me, PLKI rejected my application.

7. Thereafter, by letter dated November 8, 2022, PLKI purported to terminate the Franchise Agreement as a result of Debtor having failed to have my husband's ownership interest transferred within the time provided for in the Franchise Agreement. In order to address what I believe was an improper and invalid purported termination of the Franchise Agreement and to reorganize, Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 4, 2023 (the "Petition Date").

8. Simultaneous with the filing of the petition, Debtor has filed an adversary proceeding against PLKI with regard to the purported termination of the Franchise Agreement.

9. Debtor has remained in possession of its assets and has continued management of its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. To enable the Debtor to operate effectively and preserve the value of its assets, Debtor has requested various types of "first day" relief in the First Day Motions filed with this Court contemporaneously herewith.

## II. FIRST DAY MOTIONS

### A. Expedited First Day Application

11. Debtor requests entry of an order designating its First Day Motions as requiring expedited consideration before this Court. I believe that the relief requested in the Expedited First Day Application is essential to avoid the potentially disruptive impact the commencement of the chapter 11 case might have on the Debtor and will facilitate the Debtor's orderly transition

into chapter 11 and increase the value of the Debtor's assets. Accordingly, on behalf of the Debtor, I respectfully submit that the Expedited First Day Application be approved.

B. The Cash Collateral Motion

12. Debtor is indebted to the United States Small Business Administration ("SBA") in the amount of approximately $165,000.

13. The SBA debt is secured by a lien in all of Debtor's assets, including inventory, subordinate only to a lien of Spring Bank against Debtor's equipment, fixtures and furniture. Thus, the SBA has an interest in cash collateral.

14. In order to continue operations Debtor will require use of the SBA's cash collateral.

15. To protect the SBA from a diminution in the value of its collateral, Debtor has proposed providing the SBA with a replacement lien and a superpriority administrative claim, to the extent of any diminution in the value of its collateral, and monthly debt service payments in the amount due under the SBA loan documents.

16. Thus, I believe the interests of the SBA are adequately protected and Debtor should be authorized to use cash collateral.

C. The Wages Motion

17. Debtor employees 14 employees, 6 full-time and 8 part-time who are paid wages on a bi-weekly basis, one week in arrears.

18. Through the Wages Motion, Debtor requests entry of an order authorizing, but not directing, the Debtor to pay pre-petition wages to employees. None of the payments proposed to be made exceed the priority claim cap of $15,150 in section 507(a)(4) of the Bankruptcy Code.

19. The Debtor's payment of pre-petition wages will benefit the Debtor's estate and creditors by allowing the Debtor's business operations to continue without interruption. Failure to pay pre-petition wages will significantly heighten the risk that employees will terminate their employment with the Debtor, which would disrupt the Debtor's business and threaten to damage its enterprise value to the ultimate detriment of creditors.

20. For the foregoing reasons, I respectfully request that the Court authorize the Debtor to pay pre-petition wages.

D. The Cash Management Motion

21. Through the Cash Management Motion, the Debtor requests entry of an order: (a) authorizing, but not directing, the Debtor to continue: (a) (i) its Cash Management System (as defined below), (ii) existing Bank Accounts (as defined below) and not be required to open new accounts; and (iii) existing Business Forms (including Books and Records) (as defined below); (b) authorizing and directing Columbia Bank to honor all related payment requests; (c) scheduling a final hearing to consider entry of an order approving the relief requested therein on a final basis; and (d) granting related relief.

22. In connection with its Cash Management System (the "Cash Management System") the Debtor maintains an operating account and a payroll account (the "Bank Accounts") with Columbia Bank, an FDIC-insured bank with branches in New Jersey.

23. The Debtor utilizes numerous preprinted business forms (the "Business Forms") in the ordinary course of its business. To minimize expense to its estate and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of this Chapter 11 Case, Debtor requests that the Court authorize its continued use of all preprinted correspondence and business brands (including, without limitation, letterhead, purchase orders, invoices and

preprinted checks) as such forms were in existence immediately before the Petition Date – without reference to the Debtor's status as a Chapter 11 Debtor-In-Possession – rather than requiring the Debtor to incur the expense and delay of ordering new Business Forms and creating new books and records (the "Books and Records").

24. I believe that if the Debtor was required to open new bank accounts and alter its existing Cash Management System its ability to operate would be significantly compromised.

25. I believe that the relief requested in the Cash Management Motion will help to insure the Debtor's orderly entry into Chapter 11 protection and will avoid many of the possible disruptions and distractions that could divert Debtor's attention from more pressing matters during the initial stage of this Chapter 11 Case. Any disruption in the Debtor's cash management procedures will hamper the Debtor's efforts to preserve and enhance the value of its estate.

26. Further, I believe it is important that the Debtor be permitted to continue to use the Business Forms without reference to its status as a debtor-in-possession. Otherwise, the estate will be required to bear a potentially significant expense that I believe is unwarranted. I believe the relief requested in the Cash Management Motion is critical to avoid unnecessary and potentially costly disruptions to the Debtor's operations, is in the best interests of the estate and, therefore, should be granted.

E. The Utility Adequate Assurance Motion

27. Debtor receives electric and gas service from Public Service Electric & Gas ("PSE&G") and intent and telephone service from Optimum.

28. The continuation of utility services is vital to Debtor's ability to continue operating.

29. In order to address a utility's right to adequate assurance of future performance, Debtor has offered to provide a deposit and proposed procedures to address adequate assurance of performance with utilities so that utility services will not be disrupted. I believe the relief requested in the Utility Adequate Assurance Motion is critical to avoid disruption to Debtor's operations and should be granted.

I certify under penalties of perjury that the foregoing statements are true and correct.

Dated: December 09, 2022

Ranjana Jethwa