| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**Caption in Compliance with D.N.J. LBR 9004-2(c)** | |
| **SHAPIRO, CROLAND, REISER APFEL & DI IORIO, LLP**<br>John P. Di Iorio, Esq.<br>411 Hackensack Avenue<br>Hackensack, NJ 07601<br>(201) 488-3900<br>Attorneys for Debtor<br>and Debtor-In-Possession | |
| In Re:<br><br>JFM HAMBURG LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-10057-JKS |
| JFM HAMBURG LLC,<br><br>Plaintiff,<br><br>v.<br><br>POPEYES LOUISIANA KITCHEN, INC.,<br><br>Defendant. | Adv. Pro. No.: 23-01004-JKS<br><br>Hearing Date: August 22, 2023<br>at 10:00 a.m. |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO F.R.B.P. 9019 AND 11 U.S.C. §105(a) APPROVING SETTLEMENT OF ADVERSARY PROCEEDING**

---

JFM Hamburg LLC ("Debtor"), the debtor and debtor-in-possession in the above captioned chapter 11 case and the Plaintiff in the above captioned adversary proceeding (the "Adversary Proceeding"), moves for entry of an order pursuant to F.R.B.P. 9019 and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") approving the Debtor's settlement of the Adversary Proceeding in accordance with the terms of the Settlement

Agreement annexed hereto as Exhibit A (the "Motion). In support of the Motion, Debtor respectfully states:

## BACKGROUND

1. For approximately fifteen years, Debtor has operated a Popeyes Restaurant located at 1046 Hamburg Turnpike, Wayne, New Jersey pursuant to a Franchise Agreement with Popeyes Louisiana Kitchen Inc. ("PLKI") entered into on December 16, 2008 (the "Franchise Agreement").

2. On November 8, 2022 PLKI issued a letter purporting to terminate the Franchise Agreement effective January 8, 2023 based solely on Debtor having failed to transfer the ownership interest of Ramesh Jethwa, after he passed away on December 19, 2018, within the time set forth in the Franchise Agreement.

3. To prevent a termination of the Franchise Agreement, and a loss of Debtor's going concern value, on January 4, 2023 (the "Petition Date") Debtor filed a voluntary petition for relief under subchapter V of title 11 of chapter 11 of the Bankruptcy Code.

4. Pursuant to section 1182 of the Bankruptcy Code, the Debtor is operating its business as a debtor-in-possession. Sam Della Fera has been appointed, and is serving, as the Subchapter V Trustee (the "Subchapter V Trustee").

## ADVERSARY PROCEEDING

5. On the Petition Date, Debtor filed the Adversary Proceeding against PLKI seeking to enjoin and restrain the termination of the Franchise Agreement and seeking approval of a transfer of Ramesh Jethwa's interest in Debtor to his wife, Ranjana Jethwa, which had been rejected by PLKI. In addition, the Debtor sought damages in the Adversary Proceeding.

6. The Court entered a Temporary Restraining Order in the Adversary Proceeding and thereafter a preliminary injunction enjoining and restraining PLKI from terminating the Franchise Agreement pending further order of the Court.

## SETTLEMENT OF THE ADVERSARY PROCEEDING

7. With the substantial and able involvement of the Subchapter V Trustee, the Debtor and PLKI engaged in lengthy, detailed discussions regarding a settlement of the Adversary Proceeding. Ultimately, as more particularly described in the Settlement Agreement annexed hereto as Exhibit A, the parties agreed to a continuation of the restraints entered against PLKI through August 31, 2023 for the purpose of allowing Debtor to consummate a sale of substantially all of its assets to PN Restaurants LLC (the "Buyer"), with the consent and approval of PLKI as required under the terms of the Franchise Agreement and the New Jersey Franchise Practices Act (N.J.S.A. 56-10-1, et seq.) on the terms and conditions described in the Sale Agreement included in the companion motion filed herewith to approve a sale of substantially all of Debtor's assets pursuant to sections 363(b),(f) and (m) of the Bankruptcy Code.[1]

8. By this Motion, Debtor seeks entry of an order pursuant to F.R.B.P. 9019 and section 105(a) of the Bankruptcy Code approving the Settlement Agreement.

## BASIS FOR REQUESTED RELIEF

9. Rule 9019(a) of the F.R.B.P. authorizes the Court, after notice and a hearing, to approve a compromise or a settlement of a controversy. Although Rule 9019(a) contains no standards for judicial approval of a settlement, case law directs the Court to determine whether the settlement is "fair and equitable" and "in the best interests of the estate". Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Andersen, 390 U.S. 414, 424 (1968).

[1] This is a general description of the settlement, which is qualified and subject to the terms contained in the Settlement Agreement.

10. The settlement need not be the best that could have been achieved, but only must not fall "below the lowest point in the range of reasonableness". In re Drexel Burnhan Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citations omitted). When examining a settlement agreement, the Court should refrain from deciding the numerous questions of law and fact and instead should canvass the issues . In re WT Grant Certificate of Occupancy, 699 F.2d 599, 608 (2d Cir. 1983).

11. The United States Courts of Appeals for the Third Circuit recognizes that settlements are favored in bankruptcy in order to minimize litigation costs and to expedite administration of the estate. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). In determining whether to approve a settlement, a bankruptcy court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393.

12. The Third Circuit has followed the Supreme Court's opinion in TMT Trailer Ferry and set forth the following four factors that a bankruptcy court must consider in determining whether a settlement should be approved: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors. Id. (citation omitted).

13. Application of the Martin factors to the instant case demonstrates that the Settlement Agreement is fair and equitable, in the best interests of the estate and clearly falls above the "lowest point in the range of reasonableness" and, therefore, should be approved.

## PROBABILITY OF SUCCESS

14. The first Martin factor, the probability of success in litigation against PLKI is very difficult to assess. Substantial discovery would be needed with regard to the allegations of the Complaint and there is no assurance that the evidence will support a finding that the purported termination of the Franchise Agreement or the failure to approve a transfer of an interest in Debtor was invalid under applicable law.

15. On the other hand, a closing of the Sale Agreement with the consent and approval of PLKI will provide funds sufficient to pay all creditors' claims in full and provide a distribution to Debtor's equity holder. Accordingly, this prong of the Martin case weighs in favor of approving the Settlement Agreement.

## DIFFICULTY OF COLLECTION

16. The second Martin factor of difficulty of collection is satisfied because even if Debtor prevailed in the litigation and the Court restrained the termination of the Franchise Agreement, PLKI would argue that Debtor could not assume and assign the Franchise Agreement pursuant to section 365(c)(1) of the Bankruptcy Code, which prohibits assumption or assignment of an executory contract if applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties. In re West Elec., Inc., 852 F.2d 79 (3d Cir. 1988).

17. Although if it prevails in the Adversary Proceeding, Debtor could seek a dismissal of the bankruptcy case, PLKI's consent would still be required to approve a sale of Debtor's assets, which PLKI may not provide. On the other hand, the settlement provides for

PLKI to consent to a sale to the Buyer on the terms and conditions set forth in the Settlement Agreement.

**COMPLEXITY OF THE LITIGATION**

18. The litigation over the actions of PLKI in terminating the Franchise Agreement and declining to approve a transfer would be very fact sensitive, complex and uncertain and extremely expensive. Undoubtedly, PLKI would present its actions as having been valid under applicable law.

**PARAMOUNT INTEREST OF CREDITORS**

19. The settlement provides an opportunity for Debtor to sell substantially all of its assets with the consent of PLKI, and pay all of its creditors in full and provide for a distribution to Debtor's equity holder.

20. That opportunity is substantially better for creditors than the uncertain, expensive litigation that would be entailed in the continued prosecution of the Adversary Proceeding.

21. For all of the above reasons, the Debtor respectfully submits that the proposed settlement is fair, reasonable and in the best interests of creditors. Accordingly, the Settlement Agreement should be approved.

WHEREFORE, Debtor respectfully requests entry of an order approving the Settlement Agreement and granting such other and further relief as is equitable and just.

**SHAPIRO, CROLAND, REISER**
**APFEL & DI IORIO, LLP**
Attorneys for Debtor

Dated: ~~July~~ August 1, 2023

By: [signature]
John P. Di Iorio

# EXHIBIT A

# SETTLEMENT AGREEMENT

THIS AGREEMENT (the "Agreement") executed this 31st day of July, 2023, by and among **POPEYES LOUISIANA KITCHEN, INC.**, a Minnesota corporation, whose principal place of business is 5707 Blue Lagoon Drive, Miami, Florida 33126 ("PLKI") and **JFM HAMBURG, LLC**, a New Jersey limited liability company ("Franchisee"), whose principal place of business is 2 Market Street, 2nd Floor, Paterson, New Jersey 07501, and **Ranjana Jethwa, as the representative of the Estate of Ramesh Jethwa** (together with PLKI and Franchisee, the "Parties").

## WITNESSETH

WHEREAS, Franchisee and PLKI entered into a Popeyes Louisiana Kitchen Franchise Agreement dated December 16, 2008 (the "Franchise Agreement"), for Popeyes Louisiana Kitchen Franchised Restaurant No.10895 located at 1046 Hamburg Turnpike, Wayne, New Jersey 07470 (the "Franchised Restaurant"); and

WHEREAS, Ramesh Jethwa, pursuant to the Guaranty and Subordination Agreement dated December 16, 2008 enumerated on Schedule "1" attached hereto, personally, unconditionally and irrevocably, guaranteed the payment and performance of all of the obligations of Franchisee in any agreement with PLKI relating to the Franchised Restaurant; and

WHEREAS, PLKI sent to Franchisee a letter dated November 8, 2022 (the "Notice of Default and Termination"), which notified Franchisee that, in PLKI's view, Franchisee was in default of the Franchise Agreement as a result of Franchisee's failure to transfer the interest of Mr. Ramesh Jethwa in the Franchisee within 18 months of his death; and

WHEREAS, Franchisee disputes and deny the existence of any default under the Franchise Agreement; and

WHEREAS, PLKI is not waiving its position that Mrs. Ranjana Jethwa has not been approved by PLKI as the Managing Owner of the Franchised Restaurant and does not meet PLKI's qualifications to be approved as the Managing Owner of the Franchised Restaurant; and

WHEREAS, before the effective date of the Notice of Default and Termination, Franchisee filed a voluntary chapter 11 petition on January 4, 2023 (the "Petition Date"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), commencing Case No. 23-10057 (JKS) the "Bankruptcy Case"); and

WHEREAS, also on the Petition Date, Franchisee filed a Verified Complaint for Injunctive and Declaratory Relief, commencing Adversary Proceeding No. 23-1004 (JKS) (the "Adversary Proceeding") seeking, *inter alia*, to enjoin PLKI from terminating the Franchise Agreement; and

WHEREAS, the Parties having engaged in settlement negotiations with the assistance of the Subchapter V Trustee appointed in the Bankruptcy Case, and pursuant to the terms hereof having resolved the disputes (a) set forth in the Adversary Proceeding and (b) regarding the Franchise Agreement and Franchisee's alleged default thereunder; and

WHEREAS, in connection with this Agreement and with the assistance of the Subchapter V Trustee appointed in the Bankruptcy Case, Burger King Company LLC ("BKC"), JFM Sparta LLC, J.F.M. 6090, Inc., JFM Wayne LLC, JFM Spring, LLC, JFM Nyack LLC and JFM Haledon, LLC Hamburg, Ranjana Jethwa, in an individual capacity and as the representative of the Estate of Ramesh Jethwa, and PLKI engaged in settlement negotiations (the "JFM/BKC Franchisees"), and resolved their respective disputes subject to the Parties' entering into this Agreement and Bankruptcy Court approval of this Agreement (the "JFM/BKC Settlement Agreement").

NOW THEREFORE, with the intent of being legally bound hereby, in consideration of the mutual covenants and promises hereinafter set forth, and other good and valuable consideration, which the parties acknowledge is sufficient to create a legally binding agreement, the Parties agree as follows:

## I. ACKNOWLEDGMENTS AND WAIVERS

A. The Parties agree that all of the above recitals are true and correct and are hereby incorporated by reference as if each were fully set forth herein.

B. Franchisee acknowledges, agrees, and confirms that it has no further authority or right to operate except as specifically set forth in this Agreement, and the Franchise Agreement solely up until the August 31, 2023 termination date.

C. Franchisee further acknowledges and agrees that any support given by PLKI to the Franchised Restaurant subsequent to the Franchise Agreement's termination and prior to the execution of this Agreement is not a waiver of PLKI's rights under the Franchise Agreement, or any other agreement between Franchisee and PLKI (collectively, the "Popeyes Agreements") or the law and shall not be deemed to be so.

D. Franchisee acknowledges and agrees that, subject to the terms herein, PLKI shall have the right to disclose to any potential operator or purchaser of the Franchised Restaurant operated by Franchisee any information, financial statements, scopes of work, report, schedules, analysis or agreements supplied to or prepared by PLKI or by Franchisee and their lenders, landlords, accountants, lawyers and advisors regarding the Franchised Restaurant or any related assets (including assets controlled by related or affiliated companies). Franchisee agrees that any confidentiality provisions under any agreement they have with PLKI shall be deemed waived with respect to any restrictions those provisions may have on PLKI disclosing such information to any potential operator or purchaser of the Franchised Restaurant.

E. Franchisee warrants and represents that, subject to Bankruptcy Court approval, this Agreement constitutes a valid and binding obligation enforceable in accordance with its terms.

## II. TERMINATION OF FRANCHISE AGREEMENT

The Parties acknowledge and agree that the Franchise Agreement shall terminate effective at 12:01 a.m. on August 31, 2023 (the "Termination Date"), and the rights as granted therein are of no further force and effect except as specifically set forth in this Agreement.

## III. THE PARTIES' OBLIGATIONS

In consideration of agreeing to enter into this Agreement, the Parties unconditionally and irrevocably agree that they shall be bound by all terms and conditions in the Franchise Agreement except as such terms are specifically modified herein.

## IV. SALE OF THE FRANCHISED RESTAURANT

A. The Parties acknowledge and agree that, except as specifically set forth in this Agreement, the Franchisee's right to sell the Franchised Restaurant as a Popeyes Louisiana Kitchen Franchised Restaurant is subject to and controlled by the terms of the Franchise Agreement.

B. Franchisee entered into an Asset Purchase Agreement with PN Restaurants, LLC (the "Proposed Buyer") pursuant to which the Proposed Buyer seeks to acquire substantially all of the assets used by the Franchisee in connection with the Franchised Restaurant as well the assets used by Franchisee's affiliate in connection with the operation of a BURGER KING® restaurant (the "Burger King Restaurant") at the same premises (the "Purchase Agreement"). Thereafter, the Proposed Buyer terminated the Purchase Agreement.

C. Subject to the execution of the JFM/BKC Settlement Agreement and the Approval of this Agreement by the Bankruptcy Court, PLKI agreed to provide financial incentives to the Proposed Buyer in order for the sale to close at the previously agreed to purchase price. As a result, the Proposed Buyer agreed to reinstate the Purchase Agreement and to amend the Purchase Agreement to remove the Burger King Restaurant from the transaction.

D. As of the date hereof, the Proposed Buyer is approved on a preliminary basis by PLKI to purchase the Franchised Restaurant, and subject to adherence to PLKI's standard criteria and policies in connection with the sale of a franchised Popeyes Louisiana Kitchen Franchised Restaurant, and provided Franchisee is in compliance with the terms of the Franchise Agreement (except as set forth in the Notice of Default and Termination), PLKI shall approve the Proposed Buyer to purchase the Franchised Restaurant on a final basis unless there has been a change of circumstances

which reasonably allows PLKI to not approve the Proposed Buyer to purchase the Franchised Restaurant on a final basis.

E. Franchisee acknowledges and agrees that no current shareholder, investor, partner, beneficial owner, and/or equitable owner of the Franchised Restaurant shall have any ownership interest as shareholder, partner, investor, beneficial owner, and/or equitable owner of any proposed purchaser of the Franchised Restaurant, including the Proposed Buyer.

F. The sale of the Franchised Restaurant must be accomplished in accordance with PLKI's standard documents used in connection with a sale of a franchised Popeyes Louisiana Kitchen Franchised Restaurant including all appropriate applications and associated documentation to be completed by the Proposed Buyer.

G. Franchisee acknowledges and agrees that the sale transaction must be approved in accordance with PLKI's current franchise approval process and standards, that no closing shall occur without PLKI's standard approval process for sales of a franchised Popeyes Louisiana Kitchen Franchised Restaurant from franchisee-to-franchisee, and that the sale of the Franchised Restaurant shall close no later than the Termination Date or, if PLKI is in the process of considering approval, 30 calendar days after PLKI approves the Sale Transaction, whichever is later.

H. Franchisee authorizes PLKI to provide to the Proposed Buyer all information regarding historical gross sales at the Franchised Restaurant, past and present operational issues existing at the Franchised Restaurant, and all remodeling, repair, and maintenance issues existing at the Franchised Restaurant.

I. Should PLKI approve the proposed sale, PLKI will issue to the Proposed Buyer, at closing, the then current Popeyes Louisiana Kitchen Franchise Agreement for the Popeyes Louisiana Kitchen system for a term which shall be coterminous with the terminated Franchise Agreement for the Franchised Restaurant.

J. PLKI shall not approve the proposed sale on a final basis if there are monetary obligations due and owing to PLKI on account of the Franchise Agreement, or if there are unpaid royalty and advertising fees due and owing to BKC from the JFM/BKC Parties on account of their respective franchise agreements.

## V. RELEASES

IN FURTHER CONSIDERATION OF PLKI'S EXECUTION OF THIS AGREEMENT, FRANCHISEE, ITS SUCCESSORS, ASSIGNS, HEIRS, PERSONAL REPRESENTATIVES AND AFFILIATES (INDIVIDUALLY AND COLLECTIVELY, THE "RELEASING PARTIES"), REMISE, RELEASE, ACQUIT, SATISFY AND FOREVER DISCHARGES PLKI, ITS SUCCESSORS, PREDECESSORS, COUNSEL, INSURERS, ASSIGNS, OFFICERS, DIRECTORS, EMPLOYEES, PARENT, FRANCHISEES, AFFILIATES, SUBSIDIARIES AND AGENTS, PAST AND PRESENT (INDIVIDUALLY AND COLLECTIVELY, THE "RELEASE PARTIES") FROM AND AGAINST ALL CLAIMS, ACTIONS, CAUSES OF ACTION, DEMANDS, DAMAGES, COSTS, SUITS, DEBTS, COVENANTS, CONTROVERSIES, AND ANY OTHER LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, LIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED, DISPUTED, UNDISPUTED, LEGAL OR EQUITABLE (HEREINAFTER "CLAIMS"), WHICH THE RELEASING PARTIES EVER HAD, NOW HAVE, CAN, SHALL OR MAY HAVE, AGAINST ANY OR ALL OF THE RELEASED PARTIES FOR, UPON OR BY REASON OF ANY MATTER, CAUSE OR THING WHATSOEVER, FROM THE BEGINNING OF THE WORLD TO THE DATE OF THIS AGREEMENT. FRANCHISEE, ON BEHALF OF ITSELF AND THE RELEASING PARTIES, WAIVE ANY RIGHTS AND BENEFITS CONFERRED BY ANY APPLICABLE PROVISION OF LAW EXISTING UNDER ANY FEDERAL, STATE OR POLITICAL SUBDIVISION THEREOF WHICH WOULD INVALIDATE ALL OR ANY PORTION OF THE RELEASE CONTAINED IN THIS AGREEMENT BECAUSE SUCH RELEASE MAY EXTEND TO CLAIMS THAT THE RELEASING PARTIES DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION OF THIS AGREEMENT.

PLKI HEREBY RELEASES, DISCHARGES AND AGREES NOT TO SUE OR PROCEED IN ANY MANNER AGAINST THE FRANCHISEE OF AND FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION AND DAMAGES WHICH PLKI HAD, NOW HAVE, OR MAY HAVE, AGAINST THE FRANCHISEE, FROM THE BEGINNING OF TIME UNTIL THE DATE OF THIS AGREEMENT, ONLY WITH RESPECT TO THE ADVERSARY PROCEEDING, THE FRANCHISE AGREEMENT AND THE GUARANTEE. NOTWITHSTANDING THE FOREGOING, PLKI SPECIFICALLY RETAINS ITS RIGHT TO SUE FRANCHISEE FOR: (1) ENFORCEMENT OF ITS POST-TERMINATION RIGHTS AS SET FORTH IN THE FRANCHISE AGREEMENT, INCLUDING BUT NOT LIMITED TO FRANCHISEE'S INDEMNIFICATION OBLIGATIONS AND COVENANTS NOT TO COMPETE; (2) ANY FRAUD OR MISREPRESENTATION COMMITTED BY FRANCHISEE ARISING PRIOR TO THE DATE OF THIS AGREEMENT, TO THE EXTENT SUCH FRAUD OR MISREPRESENTATION WAS RELIED UPON BY PLKI AS AN INDUCEMENT TO ENTER INTO THIS AGREEMENT; AND/OR (3) ENFORCEMENT OF THE TERMS OF THIS AGREEMENT.

## VI. WAIVER OF RIGHT TO TRIAL BY JURY

THE PARTIES HERETO EACH HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN

RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT, THE FRANCHISE AGREEMENT, OR ANY OTHER AGREEMENT AMONG PLKI AND FRANCHISEES, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY TO THIS AGREEMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING THIS AGREEMENT.

## VII. JURISDICTION AND VENUE

A. The Parties acknowledge and agree that this Agreement is deemed entered into in Miami, Florida and is governed by Florida law, and that the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") shall be the venue and proper forum interpret and enforce this Agreement. Notwithstanding the foregoing, in the event Franchisee breaches or does not comply with this Agreement, the parties agree that (1) the U.S. District Court for the Southern District of Florida shall be a proper venue and forum in which to adjudicate such issues including for the purposes of enforcing PLKI's post-termination rights and seeking injunctive relief and (2) the automatic stay of Section 362 of the Bankruptcy Code shall not apply to any post-termination relief. If such court lacks jurisdiction, then the 11th Judicial Circuit (or its successor) in and for Miami-Dade County, Florida shall be the exclusive venue and proper forum for any such case or controversy.

B. The Parties further agree that, in the event of litigation arising out of or in connection with this Agreement in these courts, they will neither contest nor challenge the jurisdiction or venue of these courts.

**C. To the extent there is a conflict between this Agreement or the Franchise Agreement and the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 et seq. (the "NJFPA"), this Agreement or the Franchise Agreement, as applicable, shall govern.**

## VIII. NOTICE

All notices, consents, or other communications under this Agreement must be in writing and shall be deemed sufficiently given if delivered or sent via a nationally-recognized overnight delivery service or registered or certified mail, postage fully prepaid, as follows:

<u>If to PLKI:</u>
Popeyes Louisiana Kitchen, Inc.
Post Office Box 020783
Miami, Florida 33102
Attn: Legal Department

[<u>If to Franchisee:</u>
2 Market Street – 2nd Floor
Paterson, New Jersey 07501

Notice shall be deemed delivered upon receipt of the overnight delivery or the registered or certified mail delivery.

## IX. GENERAL

A. This Agreement has been prepared after extensive negotiations between the parties hereto, and if any ambiguity is contained herein then in resolving such ambiguity no weight shall be given in favor of or against any party on account of its drafting this Agreement.

B. All of the provisions of this Agreement shall be binding upon the respective parties, their heirs, and assigns.

C. This Agreement may be executed in one or more counterparts and by different parties in separate counterparts. All of such counterparts shall constitute one and the same agreement and shall become effective when one or more of the counterparts of this Agreement have been signed by each of the signatories. The parties may execute this Agreement in any number of actual or telecopied counterparts and by the different parties on separate counterparts, each of which when so executed shall be an original.

D. The parties to this Agreement have had the opportunity to consult with legal counsel and have reached this agreement to resolve the matters set forth herein, and agree to enter into this Agreement as evidence of that resolution. Franchisee specifically acknowledges and agrees that its counsel advised it of the legal risks associated with the general release set forth above, and that it, with knowledge of the risks and upon advise of counsel, fully released PLKI of all unknown and unanticipated claims arising from their relationship.

E. No party to this Agreement has relied upon any oral statement or agreement in making the decision to execute this Agreement. Franchisee represents and warrants that it has reviewed with its attorney the financial and legal risks associated with entering into this Agreement, including the general release, and releasing PLKI from any and all known and unknown claims arising from their relationship, and that it is entering this Agreement freely, and with knowledge and acceptance of such risks.

F. The foregoing constitutes the entire agreement of the parties with respect to the matter stated herein and there are no other oral or written agreements between the parties which are supplemental or contrary to this Agreement. There are no contemporaneous oral promises, representations, or agreements not set forth herein inducing entry into this Agreement and all prior negotiations, discussions, statements, and representations are merged herein. This Agreement may only be modified by a written modification signed by each party. Reliance by any party on oral communications accordingly is unwarranted.

G. In the event that any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect or for any reason, the validity, legality, and enforceability of any provision in every other respect and of the remaining provisions of this Agreement shall not be in any way impaired.

H. Franchisee acknowledges and agrees that monetary damages will be inadequate to remedy the damage caused to PLKI in the event that Franchisee operates the Franchised Restaurant after the termination of the Franchise Agreement without PLKI's written authorization. Accordingly, Franchisee acknowledges and agrees that PLKI is entitled to injunctive relief including the issuance of a temporary restraining order and/or preliminary injunction issued by a court of competent jurisdiction. In light of the nature of this Agreement and the potential need for PLKI to take prompt action to abate a dangerous condition and/or mitigate the damage to its trademarks and service marks, Franchisee acknowledges and agrees that any bond required by the court issuing injunctive relief to PLKI shall be in a nominal amount not to exceed $5,000.

I. Franchisee specifically acknowledges and agrees that any transfer, sale, conveyance, or assignment made in violation of this Agreement shall constitute a default of this Agreement that is not capable of being cured and is a material breach of this Agreement. Upon such breach, PLKI is immediately entitled following written notice to any and all remedies permitted by law or equity, including injunctive relief to enjoin any such unauthorized transfer, sale, conveyance, or assignment.

J. The effectiveness of this Agreement is subject to (a) the approval of the Bankruptcy Court and (b) to the execution of the JFM/BKC Settlement Agreement by the parties thereto.

A. Within 5 days of the approval of this Agreement by the Bankruptcy Court, Franchisee shall dismiss the Adversary Proceeding with prejudice

[NO FURTHER TEXT ON THIS PAGE]

READ, ACKNOWLEDGED, AND AGREED TO as of the date first above written.

**POPEYES LOUISIANA KITCHEN, INC.,**
a Minnesota corporation

By: ____________________
Name: Tiffany Ahmed
Title: G.M., Northeast Division

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this 31 day of July 2023, by Tiffany Ahmed as General Manager of Popeyes Louisiana Kitchen, Inc., a Minnesota corporation. He/She is personally known to me or has produced a ____________ as identification.

(SEAL)

SHARALEA ANDRADE
MY COMMISSION # GG 960779
EXPIRES: June 20, 2024
Bonded Thru Notary Public Underwriters

____________________
Notary Public
My Commission Expires: 6/20/24

[SIGNATURES CONTINUE ON NEXT PAGE]

[SIGNATURES CONTINUE]

Ranjana Jethwa, as the representative of Ramesh Jethwa's Estate

State of New Jersey )
)ss
County of Passaic )

SWORN TO AND SUBSCRIBED before me this 31th day of July, 2023 by Ranjana Jethwa who is personally known to me or did present Drivers License as identification.

Notary Public
Commission Stamp:

DANIEL ALBARRAN
Notary Public, State of New Jersey
My Commission Expires Dec 15, 2027

7/31/23

[SIGNATURES CONTINUE ON NEXT PAGE]

[SIGNATURES CONTINUE]

**JFM HAMBURG, LLC**, a New Jersey limited liability company

By: Rajana Rathore
Title: Member

Attest: ______________________
Title: ______________________

STATE OF New Jersey
COUNTY OF Passaic

BEFORE ME, the undersigned authority, personally appeared Ranjana Jethwa and ______________________ to me well known and known to me to be the individuals described in and who executed the foregoing instrument on behalf of _____, INC., a ________ corporation, and severally acknowledged to and before me that they executed such instrument and that the seal affixed to the foregoing instrument is the corporate seal of said corporation, and that it was affixed to said instrument by due and regular corporate authority, and that said instrument is the free act and deed of said corporation.

WITNESS my hand and official seal this 31th day of July, 2023.

(SEAL)

[signature]
Notary Public
My Commission Expires:

DANIEL ALBARRAN
Notary Public, State of New Jersey
My Commission Expires Dec 15, 2027

7/31/23

## SCHEDULE 1

THE FRANCHISED RESTAURANT AND FRANCHISE AGREEMENT

| Popeyes Louisiana Kitchen Franchised Restaurant Unit No. | Address | Date of Franchise Agreement | Date of Guaranty and Subordination Agreement, if any | Date of Conditional Consent to Assignment of Franchise Agreement, if any | Date of Lease, if any |
|---|---|---|---|---|---|
| 10895 | 1046 Hamburg Tpk Wayne, NJ 07470 | 12/16/2008 | 12/16/2008 | N/A | N/A |